May it please the court, my name is Todd Eddins. I am representing Petitioner Appellant. This is a 2254 habeas corpus petition. The defense theory at trial wasn't me. Everybody saw something, nobody saw everything. The evidence on the record shows that everybody did see something and everything and it was pretty consistent that what everybody did see was an individual struggling with the victim shortly before the victim collapsed. The defense had one exculpatory witness. This one exculpatory witness knew what happened, saw what happened and basically said that that struggling man inflicted the fatal injury to the victim in this case. Is that, not to manufacture this down too tightly, but is that what that witness would have said? That witness, which witness are you referring to, the exculpatory witness? Yes. The exculpatory witness would have said that the struggling individual basically with an elbow caused the fatal blow. Initially that exculpatory witness told the police approximately a week later from the incident that the person that she alleges committed the crime kicked the victim. That was the one reason in the deliberative process from counsel that she decided not to call this witness. That was the primary reason. She had two inconsistent theories about how that actual blow occurred. Also, didn't she have Tanaka who basically said he didn't testify in effect that there was a struggle. He just said he was being held back because he thought that's what was happening. So she had more than just the problem with the conflicting testimony, didn't she? When you say she, are you referring to the counsel? Yeah. Well, I think one aspect of her deliberative process was that her theory was the sole state witness, a guy named Torres, was not there. And she ran that theory throughout the case. And one reason why the exculpatory witness wasn't called was because she initially said that Torres was right there. What about Lee? Mr. Lee was an individual who apparently was right near the exculpatory witness. He did not, however, see, like everybody else, what actually happened. He said Torres was right there. I mean, he confirmed that Torres was right there at the site of the fight. That's correct. So you wouldn't want him coming in? I mean, you know, she's kind of stuck there weaving her clients what he's told her and also what theory they're going to take trying to uphold that. So I'm having some trouble understanding why not calling these witnesses was fatal because it would have been fatal to her theory and then she would have had no theory. Let me just say that I don't think it was unreasonable not to call Mr. Lee. However, with respect to Ms. Ka'ai, the exculpatory witness, whatever she said, and just switching from kick to elbow, was still consistent with the defense theory that this guy didn't do it. He didn't do it. And that's the gist of it. I can see where it's probably, it was not necessarily unreasonable not to call Mr. Lee. But Ms. Ka'ai, who was a friend of the victim, actually visited him at the hospital that night, who presumably, you know, would have no motive to help the defendant out on trial. She was the one who would have provided the exculpatory. But didn't the medical examiner say an elbow to the chest was not a viable theory in terms of causing death? And so maybe she didn't want a witness that would easily be contradicted by the medical testimony of record. So why would it be unreasonable to not subject your theory to the medical examiner saying it's a crazy theory and the medical examiner is going to have a great deal of weight with the jury? So why is it unreasonable to not take that chance? What the medical examiner did say is this was an incredibly rare occurrence, a commodio cordis. And what she did say was blunt force can cause that. The distinction from what the defense reviewed with the medical examiner was that elbow could not necessarily cause a fractured sternum. Now, that's where we get into the unreasonableness of counsel not consulting with an expert who could have supported the theory that the elbow could have caused a fractured sternum. That's the distinction. And that's why there's two aspects here. The counsel chose not to interview the exculpatory witness at trial because presumably the kick elbow inconsistency and also chose not to consult with an expert who could have corroborated the exculpatory witness's testimony about the elbow strike. Who was that expert? The expert that... That an elbow could break through the sternum and cause the injury. At the motion for new trial it was a martial arts expert that they proffered that mentioned that in his view and in his experience a blow, an elbow blow could fracture the sternum. There was a problem in calling him, wasn't there? Wasn't he Mr. Kwok's martial arts trainer? No, it was a different martial arts instructor who was called at trial. The one who came in at the motion for new trial I believe was somebody different. Had he had any experience with that, however? I can't... I thought he had not, was one of the problems. Had any experience with... Elbows breaking sternum as opposed to imagining that it might. I can't say for sure. I think he was opining that in his experience, I mean I don't think he ever did it himself or saw that happen. So you're going to have some martial arts guy come in who's never seen it happen, who's never done it himself and he was going to be an expert to say it could happen. Well... In contradistinction to the medical expert. The point would have been is get an expert, not necessarily a martial arts expert. I think the preferable expert to procure would have been a forensic expert on par with the experience of the medical examiner who could perhaps opine about that aspect. Now generally when one is challenging the failure to procure an expert, there's a proffer made. I've now found an expert who is willing to say this. So what was the evidence in the record before the district court that there was a medical expert out there who would in fact proffer this opinion? There was not any evidence on the record that a medical expert would proffer that opinion. What there was, as I alluded to, was there was evidence that this could happen. So the court is correct. You have two minutes Mr. Edmonds. Do you want to reserve? I will. Thank you, Judge. Good morning. May I please the court? I'm Don Futo. I'm representing what we've called the state in the briefs. Two decades ago in Strickland, the court admonished that courts should strive to ensure that any effectiveness claims not become so burdensome to defense counsel that the entire criminal justice suffers as a result. I don't believe the case could have that profound an effect on the entire criminal justice system. But in as much as I live in a small community, within which is an even smaller legal community, to continence or give credit, any kind of credibility to this particular claim on this record, I believe it would cause this system to suffer. As Justice Rawlinson pointed out with respect to the procuring of the expert, in a habeas claim when you challenge the ineffective assistance of counsel, it would be petitioner's burden to procure that person and give an affidavit or supply the testimony of that person from which a court could reasonably conclude either not procuring that expert was a specific error or omission, and or the second Strickland problem which was not procuring was prejudicial. We don't have that in this case because counsel basically has done very little what Ninth Circuit jurisprudence says he must do. Counsel did not interview this, what he characterized as exculpatory witness. He did exactly the same as trial counsel. He reviewed written documents, which admits only one thing, that that exculpatory witness is not exculpatory. She was incredulous. She admitted she lied. She admitted she was biased for the victim because it was her friend. She wanted to see someone held accountable for his death. With respect to her account that it was an elbow that caused the injury, I've heard what I will, I think, gratuitously characterize as a summary of what the cause of death was, but what the medical examiner says, it wasn't just that a elbow strike couldn't fracture a sternum, but the circumstances of this case, it wasn't just a fractured sternum, fractured sternum, fractured rib, bruised heart, bruised lung. On those circumstances, she said all it could have been to create that much force was a kick. There was not one other witness that would corroborate what counsel is saying was the exculpatory witness. Now, what counsel seems to be saying is the gist of his position is trial counsel had nothing to lose. The Supreme Court has already opined on the nothing to lose theory in Woods, in which they said we have never, ever in a Strickland type claim held that counsel is ineffective for not presenting each and every defense. In fact, it's consistently been the Supreme Court's jurisprudence that dating back from Strickland, also in Yarborough, that a judicious and professional counsel, in order to maintain credibility with the fact finder, doesn't necessarily run a shotgun defense theory. They present viable theories based upon the facts and the evidence for which the fact finder then will also attribute credibility to counsel as well as the argument. To just throw things out as Ms. Loy, that was trial counsel, was aware it would damage her credibility, more so when no one else, professional expert, witness, lay witness or otherwise, would support that theory. Kai was a friend of the victim? Kai was a friend of the victim, yes, Your Honor. And you say that would cut against her credibility? No. What cuts against her credibility is the fact that she admitted she lied. And the reason she lied was she wanted someone held accountable for the injury that was inflicted to her friend. So I think it's the lying, clearly, her own admission, that seems to cut against credibility, but equally so from a neutral source, which would be the medical examiner, that her recitation of how the person died was simply... Did the counsel interview her? Trial counsel? Yes. No. Trial counsel read both of her statements. Isn't that a little odd? And when you have a witness who potentially could support precisely your theory, and that is that your client didn't do it, now maybe she has some credibility problems, but doesn't that strike you as somewhat odd that the counsel wouldn't actually interview a potentially key witness and make a determination, eyeball to eyeball, as to whether that witness would be able to support your claim? Eyeball to eyeball would not affect what she said substantively in the first two statements. Yeah, but there may be reasons why she said that. You have to talk to her and find out. Maybe she was under pressure. She wanted something to happen. Of course, she had her poor friend who died, etc. But, I mean, there's only one witness in this case that apparently could change, you know, that would go totally at odds with what Mr. Torres said, and that's this Ms. Kahn. And she's not interviewed. And here again, counsel did not interview her. No, no, we're only talking about, now we're talking about trial counsel. And I'm talking about the ineffectiveness assistance of counsel at, in the Ninth Circuit jurisprudence, when you say that you are ineffective for not having a particular witness, it's incumbent upon the petitioner to identify the witness, get what the witness's statement would have been, and explain how that putative testimony would have affected the outcome. Counsel hasn't supplied that information to the court. So I don't want to just speculate what it would have been, but what I can point the court to is, what I will say would be the third interview, she testified at the post-trial hearing. She didn't say anything substantively different than she did in her first statement or her second statement. So inasmuch as petitioner has not given this court any information from which to conclude, well, in a fourth interview, looking her eye-to-eye as the post-trial judge did, I find her credible. The post-trial judge, he heard her, saw her eye-to-eye, as this court has pointed out, and found her incredulous. No one has ever said anything other than it's incredulous. The district court agreed with that finding, and the standard of review should be, at this point, that unless the petitioner shows the district court's finding was clearly erroneous, it should not be affected. There is no evidence that counsel has given this court that anything could have changed the result of that trial. It's all speculation, and it's all conjecture, with Ninth Circuit and Supreme Court jurisprudence says it's insufficient to support the prejudice prong, as well as the specific error or omission prong. He just would like this court to believe, without presenting any evidence, yes, had she run this nothing-to-lose theory, which Wood says isn't ineffective, who knows? Throw it on the wall, jury might have stuck with it. Why? Are we assuming the jury was acting capricious, that they wouldn't see the inconsistencies, that they would overlook those and disregard the medical examiner's testimony and all the other witnesses that didn't corroborate it and find, yes, we still find her. Incredible. That's exactly not the way we're supposed to make the assessment with respect to the prejudice prong that Strickland tells us clearly. We're to assume that the jury, the fact finder, is not arbitrary, is not capricious, and will dutifully fulfill their duties. Without evidence, to think that on this record, they would have just found, no, you're right, it was the elbow, there's just simply no basis to do that. There's simply no basis in the record for this court to find that the district court unreasonably reached its determination that Ms. Loy made strategic decisions which under Strickland do not constitute an effective assistance of counsel. Thank you. I think we have your argument in mind. The point is with that witness is she said somebody else did it. And granted there was testimony about there being limited investigative resources, but when you have all these witnesses, why not interview the one witness that can corroborate your defense theory that your guy didn't do it. And that's what happened in this case, or did not happen in this particular case. And what's interesting in this so-called shotgun approach is when the detective testified in this case, trial counsel then brought up Ms. Kai's testimony. Wasn't there a witness who said that somebody else didn't, did it? Wasn't there a witness who said that the fatal blow was caused in a different manner? She raised the issue specifically. So when we talk about, you know, we can't have this shotgun approach, that shotgun approach was brought up in this- That suggests to me some sophisticated lawyering rather than lack of reasonable representation, doesn't it? I would submit that you have the live witness who not only testified to that, but also testified that Mr. Torres was not there along with everybody else. And that's the additional prong. Your opponent suggests that Kai, do I pronounce that correctly? Yes. Admitted that she lied? Is that true? With respect to the kick versus the elbow, that is correct. Thank you. Thank you. Thank both counsel for your argument this morning. Kwok versus Frank is submitted. And we'll next hear argument in DiGucci versus Allstate Insurance Company. You may proceed. Thank you.
judges: Hawkins, McKeown, Rawlinson